IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

|                                    |     |                                 |
|------------------------------------|-----|---------------------------------|
| JOSEPH F. CARBONARO, JR.,          | :   | HONORABLE JEROME B. SIMANDLE    |
|                        Plaintiff,  | :   | Civil No. 08-4928 (JBS)         |
|          v.                        | :   |                                 |
| STEPHEN LUTZ, D.M.D. et al.,       | :   | **OPINION**                     |
|                        Defendants. | :   |                                 |

---

APPEARANCES:

Katherine D. Hartman, Esq.
ATTORNEYS HARTMAN, CHARTERED
505 S. Lenola Road
Suite 121
Moorestown, NJ 08057
        Attorney for Plaintiff Joseph F. Carbonaro, Jr.

Sean Robins, Esq.
MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.
Suite 3000
Cooper River West
681 North Park Drive
Pennsauken, NJ 08109
        Attorney for Defendants Stephen Lutz, D.M.D., Andrew
Youngblood, D.M.D., Robin Clemons, M.D., Inna Vaynberg, P.A. and
Correctional Medical Services, Inc.

**SIMANDLE**, District Judge:

**I. INTRODUCTION**

        Plaintiff, who was incarcerated at Riverfront State Prison

in Camden County, New Jersey, filed suit alleging that medical

care provided by Defendants Dr. Lutz, Dr. Youngblood, Dr.

Clemons, and Ms. Vaynberg (physician assistant) violated his

Eighth Amendment rights and constituted medical malpractice under state law.

The matter before the Court is a motion by Defendants for partial summary judgment [Docket Item 36]. Defendants argue that Plaintiff's failure to serve a timely affidavit of merit in support of his medical malpractice claims, as required by N.J. Stat. Ann. § 2A:53A-27 (West 2010), should result in the Court's dismissal of Plaintiff's medical malpractice claims with prejudice [Docket Item 36].

For the following reasons, the Court will grant the Defendants' motion for partial summary judgment and Plaintiff's claims for dental and medical malpractice will be dismissed with prejudice for failure to provide the affidavit of merit required by New Jersey law.

## II. BACKGROUND

Plaintiff's troubles began with the initial partial extraction of his tooth. According to the Complaint, in January 2008 while Plaintiff was incarcerated, Plaintiff developed a problem with one of his teeth, so x-rays were taken. (Compl. ¶¶ 14, 16.)[1] Defendant Dr. Lutz performed a tooth extraction on March 6, 2008. (Id. ¶ 16.) Plaintiff was seen by Defendant Dr.

---

[1] The facts set forth in this section are as alleged by Plaintiff in the Complaint.

Youngblood on March 7, 2008 because Defendant was experiencing migraines, earaches, and terrible pain in his sinus area and mouth, and because fluids were leaking from his sinus area and mouth.  (Id. ¶¶ 17-20.)  Dr. Youngblood took additional x-rays of Plaintiff's mouth, and concluded that the partial tooth remained in the extraction site.  (Id. ¶ 21.)  Dr. Youngblood extracted the remaining tooth fragment, and performed a skin graft to attempt to seal the site.  (Id. ¶¶ 21-22.)

Plaintiff received further post-operative care from Dr. Youngblood.  On March 11, 2008, still experiencing pain, Plaintiff returned to Dr. Youngblood.  (Id. ¶ 23.)  After examining Plaintiff's injury at the extraction site, Dr. Youngblood concluded that there was no problem, but that Plaintiff should return for a visit should he continue to experience discomfort.  (Id. ¶ 23.)  On March 14, 2008, Plaintiff heeded Dr. Youngblood's advice, and returned for additional post-operative care.  (Id. ¶ 24.)  Although Dr. Youngblood determined that the extraction site had reopened, he advised Plaintiff that he could not perform another procedure.  (Id. ¶ 24.)  He recommended that Plaintiff schedule an appointment with an oral surgeon at the University of Medicine and Dentistry of New Jersey, and requested that Plaintiff be taken to the University as soon as possible.  (Id.)  Dr. Youngblood gave Plaintiff 600 mg

3

tablets of Ibuprofen for his pain, and the antibiotic Amoxicillin for the infection. (Id. ¶ 25.) Plaintiff returned an hour later to the medical department because he continued to experience severe pain. (Id. ¶¶ 25, 28.) Defendant Robin Clemons changed Plaintiff's medication to Tylenol with Codeine No. 3, but Plaintiff refused this medication because of his allergy to Codeine (noted in Plaintiff's medical record). (Id. ¶ 28.) Dr. Clemons apologized, and proscribed five 500 mg tablets of Hydrocodone-Acetaminophen for pain. (Id.) Plaintiff apparently never ingested the codeine and thus suffered no harm from it.

Plaintiff notified prison administration on March 14, 2008 about continued pain and discomfort. (Id. ¶ 30.) But, on March 27, 2008, the Administration determined that his dental issues were addressed by the medical department and Dr. Lutz. (Id. ¶ 32.) On April 4, 2008, Plaintiff received another letter from the Assistant Corrections Ombudsman, stating that she was advised that his condition was not deemed an emergency and that Plaintiff ought to make an appointment with the dental staff at the prison should future concerns arise. (Id. ¶ 35.)

Meanwhile, after a March 31, 2008 visit to get x-rays, Plaintiff returned to the University for oral surgery on April 15, 2008. (Id. ¶ 33.) The surgeons placed a Collagen Membrane over the oroantral fistula (an opening between the oral cavity

4

and the sinus) that developed following Dr. Lutz's extraction. (Id. ¶¶ 33, 37.)  Plaintiff returned to the prison infirmary for overnight care and observation, and Defendant Vaynberg attempted to give Plaintiff Tylenol with Codeine No. 3, but he refused this medication because he is allergic.  (Id. ¶ 38.)  Ms. Vaynberg instead provided Plaintiff with 800 mg of Ibuprofen and "2.5-60 mg" of Aprodine.  (Id.)

Despite multiple follow-up visits, Plaintiff's discomfort and pain continued.  On April 22, 2008, Plaintiff went to the University for post-operative care.  (Id. ¶ 41.)  On May 2, 2008, Plaintiff saw Dr. Youngblood because of sinus pain (and pain in his left eye), migraines, and numbness in his face.  (Id. ¶ 43.)  Dr. Youngblood advised Plaintiff to return May 9, 2008 for follow-up care, and when Plaintiff returned for care Dr. Youngblood advised him to return in one month to the University should he not make progress.  (Id. ¶¶ 43-44.)  On June 10, 2008 Plaintiff returned to the medical department complaining of sinus pain, migraines and numbness on the left side of his face.  (Id. ¶ 47.)  On June 17 and 20, Plaintiff saw Dr. Youngblood who stated that he would arrange for Plaintiff to visit the University because of the post-operative complications, and so that Plaintiff could be seen by an ear, nose and throat (ENT) doctor to resolve the discomfort.  (Id. ¶¶ 48-49.)

Although Plaintiff underwent multiple procedures, there was still a possibility that he could undergo additional surgery. Plaintiff returned to the University on July 7, 2008 where he was told that he may need to return for surgery to clean and flush out his sinuses should he not make any progress in one month. (Id. ¶ 50.)  On August 12, 2008, Plaintiff returned to the medical department for his pain and discomfort, and Defendant Dr. Clemons scheduled additional x-rays for Plaintiff's head and sinus area to determine whether or not she would refer Plaintiff to an ENT.  (Id. ¶ 52.)

Several months later, Plaintiff's alleged pain and discomfort had not improved.  On August 13, 2008, x-rays were taken, and on September 3, 2008, Plaintiff returned for the follow-up appointment with Dr. Clemons who told him that the x-rays of the right side of his head were normal.  (Id. ¶ 54.) Plaintiff informed Dr. Clemons that the left side of his face was where the injury was located, so she told him to return within the month, and she gave the Plaintiff medication for pain and an antibiotic to prevent possible infection.  (Id.)  This was Plaintiff's last visit to the medical department and as of October 1, 2008 Plaintiff continued to experience constant pain, numbness and difficulty with his sinuses and sense of smell. (Id. ¶ 55.)

Plaintiff alleges in his malpractice claim that Defendant Dr. Lutz did not exercise reasonable care when extracting Plaintiff's tooth, and that Dr. Youngblood deviated from a reasonable standard of care when he (1) failed to remedy the damage caused by Dr. Lutz, and (2) when he failed to ensure that Plaintiff received prompt medical treatment following two oral surgeries [Docket Item 41 at 10]. Plaintiff also initially named Defendants CMS, Clemons and Vaynberg in his Complaint. (Compl. ¶ 8.) However, Plaintiff fails to explain the nature of his claim against these Defendants or specifically challenge the motion for partial summary judgment as to them even though the motion is filed by all named Defendants [Docket Item 36, 41].

Plaintiff submitted his complaint without a lawyer on October 6, 2008, which was filed on November 11, 2008 [Docket Item 1, 4]. On April 6, 2009 an Order was entered appointing counsel for Plaintiff [Docket Item 22]. Defendants subsequently filed this motion for partial summary judgment arguing that Plaintiff failed to timely submit the requisite affidavit of merit under N.J. Stat. Ann. § 2A:53A-27 [Docket Item 36]. Plaintiff filed a brief in opposition to Defendant's motion for partial summary judgment arguing that Plaintiff is not required to submit an affidavit of merit under the "common knowledge"

7

exception to the New Jersey Affidavit of Merit Statute [Docket Item 41 at 10].

## III. DISCUSSION

### A. The Affidavit of Merit Requirement and Motions for Summary Judgment

Defendants CMS, Dr. Lutz, Dr. Youngblood, Dr. Clemons, and Ms. Vaynberg moved for partial summary judgment based on Plaintiff's failure to deliver a timely affidavit of merit.  But since the inquiry at this stage is not what evidence Plaintiff is able to adduce, but rather about the nature of the claims advanced and facts alleged in the Complaint, the motion is more properly analyzed pursuant to Rule 12(b)(6), Fed.R.Civ.P.  See Ferreira v. Rancocas Orthopedic Assocs., 836 A.2d 779, 780 (N.J. 2003).  Plaintiff does not dispute that he failed to submit an affidavit of merit for any of his claims.  Therefore, the Court will look to the face of the Complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, Plaintiff's allegations state any legal claim which does not require an affidavit of merit.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

Although Plaintiff does not specifically oppose Defendants' motion with respect to the claims against CMS, Dr. Clemons and Ms. Vaynberg, the Court must nevertheless examine whether

dismissal of those claims is merited.  The Third Circuit Court of Appeals has found that unopposed motions to dismiss or summary judgment motions are not automatically granted merely because they are uncontested by the nonmoving party.  See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); see also Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  The Court will examine whether dismissal or summary judgment is warranted by looking at Plaintiff's Complaint.  See Lugo-Vazquez v. Grondolsky, No. 08-986, 2010 WL 2287556, at *1 (D.N.J. June 2, 2010).

## B. Affidavit of Merit Requirement and the "Common Knowledge" Exception

The Affidavit of Merit Statute imposes a set of conditions precedent to maintaining a malpractice action under New Jersey law: (1) that the plaintiff obtain an affidavit from an appropriate, licensed expert attesting to the "reasonable probability" of professional negligence; and (2) that the plaintiff provide the defendant with the affidavit within sixty days of the filing of the answer or, for good cause shown, within an additional sixty day period.  Ferreira, 836 A.2d 779, 781-82 (citing N.J. Stat. Ann. § 2A:35A-27) (West 2010)).  Failure to deliver a proper affidavit within the statutory time period is generally considered tantamount to failing to state a cause of action and, therefore, typically mandates dismissal of the

complaint with prejudice.[2]  <u>Id.</u> at 780 (citing <u>Cornblatt, P.A. v. Barow</u>, 708 A.2d 401, 412-13 (N.J. 1998)).

The New Jersey legislature enacted the Affidavit of Merit Statute to remove "frivolous lawsuits" early on from the adjudicative process.  <u>See</u> <u>Ferreira</u>, 836 A.2d 779.  The New Jersey Affidavit of Merit Statute applies to medical malpractice claims asserted in federal court pursuant to diversity jurisdiction, <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 157 (3d Cir. 2000), so this requirement also applies to professional

───────────────

[2] New Jersey's Affidavit of Merit Statute, N.J. Stat. Ann. § 2A:53A-27 (West 2010), provides, in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.  The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

<u>Id.</u>

negligence claims arising under New Jersey law within the supplemental jurisdiction of this Court under 28 U.S.C. § 1367.[3]

A plaintiff can show that the requirement for an affidavit of merit does not apply by demonstrating that the negligence claim is exempt from the statute under the "common knowledge" exception. Hubbard v. Reed, 774 A.2d 495 (N.J. 2001) (holding that an affidavit of merit is not required by a Plaintiff in common knowledge cases where expert testimony is not required at trial). In Hubbard, the Court held that the "common knowledge" exception was met for a case of dental malpractice where the dentist extracted the wrong tooth in a 16-year-old girl. The Court found that an affidavit of merit is not required in malpractice cases where expert testimony is not needed in order to explain that the care, skill or knowledge of the licensed medical professional fell outside of acceptable professional, occupational standards or treatment practices. Id. at 497, 500 (citing N.J. Stat. Ann. § 2A:35A-27) (West 2010)). When the

_____

[3] This Court has federal question jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and § 1343(a)(3). There exists supplemental jurisdiction under 28 U.S.C. § 1367 as to Plaintiff's New Jersey common law claims against Defendants, which all arose in the State of New Jersey at the Riverfront State Prison. Under supplemental jurisdiction the Court follows the same rules for determining substantive law as it would for diversity jurisdiction. 28 U.S.C. § 1652. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938) (holding that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

circumstances of the malpractice suit demonstrate that an expert would be no more qualified than a non-expert in regards to attesting to the merit of the claim(s), then an affidavit of merit is not required.  Id.  That is, should the threshold of merit be "readily apparent" from what the plaintiff alleges in his or her complaint, there is no need for an affidavit.  Id.  The Court further explained that the doctrine applies where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a Defendant's negligence without the benefit of the specialized knowledge of experts."  Id. at 499 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778, 785 (N.J. 1999) (finding no affidavit of merit was required because it is well settled law that a dentist pulling the wrong tooth is a negligent act)).

New Jersey law requires a plaintiff claiming malpractice to show (1) that a duty of care existed, (2) that defendant breached that duty, (3) that breach caused his or her injuries, and (4) that he or she suffered damages as a result.  Natale v. Camden Corr. Facility, 318 F.3d 575, 579 (3d Cir. 2003) (finding no expert testimony was needed where Defendant failed to give insulin treatment to a diabetic and Defendant did not make any inquiry into the medicinal needs of the Plaintiff).  Because of these requirements, most malpractice cases require expert testimony to establish both that a duty of care existed and that

12

it was breached.  <u>Hubbard</u>, 774 A.2d at 501.  Recognizing that plaintiffs will need expert testimony in a majority of these cases, the Supreme Court of New Jersey emphasized that plaintiffs will need to provide affidavits of merit most of the time.  <u>Id.</u> Thus, the "common knowledge" exception should only be construed narrowly.  <u>Id.</u>

### C. Plaintiff's Malpractice Claims

Plaintiff argues that the "common knowledge" exception permits his claims to proceed against at least some of the Defendants, despite the lack of an affidavit of merit.  Plaintiff argues that the following negligence claims do not require expert testimony: (1) that Defendant Dr. Lutz did not exercise reasonable care when extracting Plaintiff's tooth, and that Defendant Dr. Youngblood deviated from a reasonable standard of care when he (2) failed to remedy the damage caused by Dr. Lutz, and also when he (3) failed to ensure that Plaintiff receive prompt medical treatment following two oral surgeries [Docket Item 41 at 10].  The claim against each Defendant is discussed in turn.

### 1. Medical Malpractice Claim against Defendant Lutz, D.M.D.

Plaintiff asserts that Dr. Lutz's removal of the tooth was negligent because the tooth was not fully removed, Dr. Lutz used only one suture, the procedure caused a large oroantral fistula

to develop, and Plaintiff continues to experience migraines, sinus headaches, earaches and fluids leaking from his nostril [Docket Item 41 at 10]. Plaintiff contends that the ability to identify this deviation from the accepted standard of care for a dentist is within the ken of the jury, and therefore falls within the "common knowledge" exception to the Affidavit of Merit Statute [Docket Item 41 at 10].

Plaintiff bases his conclusion regarding the negligence of Dr. Lutz on Dr. Youngblood's assessment during the post-operative visit and on his assumption that Dr. Lutz failed to properly extract the tooth [Docket Item 41 at 10]. But the medical malpractice claim against Dr. Lutz cannot be established without an expert because the ability to recognize Defendant's actions as negligent is not within the ken of a juror, that is, it is not within the boundaries of common knowledge. Each of Plaintiff's allegations of deficiency require expert testimony.

First, the difficulties and outcomes of a tooth extraction are highly variable. It appears that these complications could depend upon factors such as the condition of the diseased tooth and/or gum, the accessability of the tooth, and the anatomical configuration of the particular tooth, its root, the patient's jaw and the sinus cavity. Where, for example, a particular tooth and its root complex are proximate to the sinus cavity, it would not appear that common knowledge could assess the dentist's

14

efforts in addressing such unique conditions of a particular case without the benefit of expert testimony.

The number of sutures needed to properly seal an extraction site is also not a matter of common knowledge.  While generally, a lay person may be able to determine without an expert that one suture is inadequate to close, say, an eight inch wound, where only a partial tooth was initially removed from Plaintiff's mouth, a lay person would not be able to discern whether or not one suture was within the realm of reasonable dental care.  The fact that a later doctor used more sutures, after a different operation, standing alone, does not establish that the use of fewer sutures fell below the standard of care.

The amount of pain and discomfort following the extraction of a tooth that is considered within the realm of normalcy is not a matter of common knowledge either.  Because pain and discomfort are common consequences of surgery, Plaintiff's claim would have to rest on the degree of post-operative pain and discomfort that could accompany non-negligent surgery, a matter not readily apparent to a lay juror without further explanation from an expert.

Finally, it is not readily apparent that a partial extraction of a tooth is evidence of negligence.  As far as the Court and a lay juror may be aware, partial extraction is the correct medical decision in some circumstances, and it may occur

15

in the absence of negligence in others.  There is also a discrepancy in the facts as to whether what remained was the partial tooth or the tooth's root system — and if there is even a medical difference between this nomenclature — further necessitating expert clarification regarding this matter.  Simply put, this is within the realm of expert knowledge, and as such, does not fall within the "common knowledge" exception.

Each of these questions of appropriate care is distinguishable from malpractice cases where a jurors' common knowledge is adequate, such as when a dentist extracts the wrong tooth altogether.  Steinke v. Bell, 107 A.2d 825 (N.J. Super. Ct. App. Div. 1954).  See also Hubbard, 774 A.2d 495.  Other examples where negligence would fall under the "common knowledge" exception include leaving a scalpel in someone's body following surgery.  Vitale v. Carrier Clinic, Inc., No. 08-3472, 2009 WL 2390602, at *8 (D.N.J. July 31, 2009).  Here, Defendant extracted the correct tooth, which was itself diseased, with various consequences which may or may not be within the range of consequences attendant to non-negligent surgery.

Therefore, this malpractice claim is not within the purview of the "common knowledge" exception, so without an affidavit of merit, the Plaintiff fails to bring a cause of

16

action under New Jersey law against Defendant Dr. Lutz.[4]

### 2. Medical Malpractice Claims against Defendant Youngblood, D.M.D.

Defendant Dr. Youngblood provided post-operative care for Plaintiff, which included the performance of a second extraction to the remaining tooth; a subsequent skin graft on the extraction site; follow-up care for the skin graft; and referral of Plaintiff to the University for both additional oral surgery on the extraction site, and to see an ENT specialist because Plaintiff allegedly continues to experience problems as a result of the tooth extraction for nearly a year following the initial procedure.

### a. Reasonable Care

Plaintiff alleges that Dr. Youngblood "deviated from a reasonable standard of care when he failed to remedy the damage in spite of performing two surgeries" [Docket Item 42 at 10]. Dr. Youngblood's alleged deviation from a reasonable standard of care for dentists with respect to the amount of surgeries he performed and whether or not he did "fail to remedy the damage," does not fall under the "common knowledge" exception to the affidavit of merit requirement.  An average person does not know

---

[4] None of the foregoing discussion is meant to determine that Dr. Lutz was not negligent.  The sole issue is whether Dr. Lutz's dental treatment was so demonstrably negligent as to fall within the "common knowledge" exception to New Jersey's affidavit of merit requirement.

what is required to mend an extraction site.  Surely, common
experience dictates that an extraction site must be attended to
following a tooth extraction, and Dr. Youngblood undeniably
attended to the extraction site.  But whether a skin graft versus
a typical suture is the more appropriate corrective remedy is not
readily apparent from common experience.  Only an expert could
explain whether Dr. Youngblood was required by the reasonable
standard of dental care to have performed another procedure, such
as the placement of a Collagen Membrane as opposed to a skin
graft.

Dr. Youngblood continued to see Plaintiff for post-operative
and follow-up care visits on multiple occasions, in addition to
performing oral surgery on the extraction site, and referring
Plaintiff to the University.  Whether or not Dr. Youngblood's
refusal to perform a second skin graft is negligence is only
discernable by an expert because the average lay person does not
know the medical judgments informing whether such dental work in
the same area of the mouth following two prior procedures would
be contraindicated.  Learning about, identifying, and providing a
proper course of treatment are what dentists absorb and later
practice upon completing dental school.  This is far more complex
an inquiry than whether it is a breach of duty to fail to provide
insulin to a diabetic, or perform an extraction of the wrong
tooth.  This claim does not fall within the "common knowledge"

exception, and without a timely affidavit of merit, the Plaintiff fails to bring a cause of action under New Jersey law against Defendant Dr. Youngblood.

### b. Prompt Treatment

Plaintiff alleges that Dr. Youngblood "[failed] to ensure that [he] received prompt medical treatment after those (2) surgeries failed." [Docket Item 42 at 10].  Plaintiff argues that this lack of prompt medical treatment is a deviation from a standard of care [Docket Item 42 at 10].  Defendant contends "without expert testimony that the jury cannot know whether this time frame is unreasonable under the applicable standard of care." [Docket Item 42 at 9].  The Court agrees.

The prompt treatment claim against Dr. Youngblood cannot be established without an expert because the ability to recognize Defendant's actions as negligent is not within the boundaries of common knowledge.  From January 2008 until October 2008, Plaintiff sought care, surgery, and follow-up care regarding a tooth extraction, and as of October 2008, Plaintiff continued to experience pain, numbness, and problems with smelling.  (Compl. ¶¶ 14, 55.)  The proper course of treatment, attendant risks, and a plaintiff's subsequent pain and discomfort is not within a lay juror's knowledge.  Neither is the knowledge that ten months is an abnormally long period of time to remedy an extracted tooth and subsequent pain and discomfort.  This is because the time

19

necessary to recover and not experience pain or discomfort is contingent upon many factors that only a dentist would know how to consider when treating a patient, such as taking into account an individual's medical history.  That such a painful and prolonged course of treatment is regrettable does not demonstrate that it was necessarily caused by dental malpractice rather than by an unfortunate but non-negligent sequence of events.

A lay juror does not have the requisite knowledge to ascertain whether the time that Plaintiff was not seen by Dr. Youngblood — because he was being treated at the University — establishes that Dr. Youngblood breached his duty of care to Plaintiff.  The Court recognizes that Dr. Youngblood did not see Plaintiff for that period of time because he referred Plaintiff to the University for additional surgery and ENT treatment. However, only an expert would be able to determine whether suspending patient visitation while Plaintiff received specialized treatment elsewhere in lieu of additional treatment by Defendant would constitute substandard care or a breached duty.  It is also unclear whether a dentist's referral of a patient to another doctor for treatment would constitute a transition in care or constitute continued care.  In other words, it is not apparent to a lay juror or this Court for that matter, whether Defendant's referral of Plaintiff to the University would constitute a negligent abandonment of the patient, or that Dr.

Youngblood negligently failed to participate in his patient's follow-up care.

The Third Circuit Court of Appeals has found that "[c]ommon sense — the judgment imparted by human experience —  would tell a layperson that medical personnel charged with caring for an inmate with a serious medical need should provide this inmate his prescribed treatment in a timely fashion." Natale, 318 F.3d at 580 (holding that the "common knowledge" exception applied where Defendant failed to give insulin to diabetic Plaintiff and Defendant did not inquire about medicinal needs of Plaintiff). But what kind of care is warranted, and what is considered timely, in the context of the post-extraction wound care, are matters requiring expert testimony.  Unlike in Natale, in which the care needed was obvious and the necessary time frame is easily ascertainable, identifying whether Defendant failed to provide prompt treatment in this case does require expert testimony to prove malpractice.  Although Plaintiff did not see Dr. Youngblood on a daily basis, he did continue to receive treatment from him for several months, during which Plaintiff was also treated at the University and by other doctors in the prison.  Plaintiff's treatment is distinguished from a diabetic patient receiving insulin treatment because a lay person is capable of recognizing that failure to administer insulin to a diabetic will likely have adverse or even fatal consequences —

especially when no one checks on the diabetic in the interim —
and therefore can be characterized as falling below a proper
standard of care.  Additionally, Plaintiff's care did not cease
even though Dr. Youngblood was not administering care while
Plaintiff was treated by other doctors and dentists.

Considering the length of time that Plaintiff underwent
treatment and experienced pain and the multiple complications and
subsequent symptoms that Plaintiff experienced, a person of
average intelligence is incapable of concluding, without the aid
of an expert, that Dr. Youngblood breached the applicable
standard for follow-up care of a rather complicated medical
situation.  Therefore, this claim does not fall within the
"common knowledge" exception, and without a timely affidavit of
merit, Plaintiff fails to bring a cause of action under New
Jersey law against Defendant Dr. Youngblood.

### 3. Plaintiff's Claims Against CMS, Dr. Clemons, Ms. and Vaynberg

The Court's inquiry as to these Defendants requires less
discussion, as Plaintiff does not oppose the motion as to them.
The Court must satisfy itself that the motion has merit.
Plaintiff names CMS as a Defendant in the Complaint, but does not
explain the nature of their liability.  As to the remaining two
defendants, Plaintiff alleges that both Ms. Vaynberg and Dr.
Clemons tried to give him medications that he is allergic to as

22

indicated in his medical record, but he also explains that he prevented them from administering the drug to him because he told them he was allergic to the medications.  (Compl. ¶¶ 28, 38.) Because the malpractice claims against these three were not mentioned by Plaintiff in his opposition to summary judgment, the precise basis for the claims, and whether they require an affidavit of merit, is not entirely clear.  As explained below, based on the allegations in the Complaint, none of the allegations successfully states a claim against Defendants CMS, Dr. Clemons or Ms. Vanyberg.

As to CMS, without further information Plaintiff fails to state a claim upon which relief can be granted.  There simply are no factual allegations with respect to CMS which raise a cause of action for medical malpractice, much less sufficient allegations to determine that the "common knowledge" exception applies.

As to Dr. Clemons or Ms. Vaynberg's negligence, it may be that a lay person would be able to conclude without the assistance of an expert that it is substandard care to attempt to give a patient codeine to which he is allergic, where that specific allergy is noted in his medical chart.  But Plaintiff does not allege that he took the medications that Defendants administered or that he subsequently experienced an allergic reaction.  Instead, Plaintiff explicitly states that he refused the medications, so Defendants administered other medications

23

that he was not allergic to.  (Id. ¶¶ 28, 38.)  Beyond these encounters with Defendants, Plaintiff does not raise further allegations against them.  Without an allegation of injury caused by these Defendants, the Court is satisfied that their unopposed motion should be granted because Plaintiff fails to bring a cause of action under New Jersey law against these Defendants.

## IV. CONCLUSION

A wise course of action for all plaintiffs in New Jersey who intend to bring malpractice or negligence claims is to provide an affidavit of merit to establish the claim, "even if they do not intend to rely on expert testimony at trial."  Hubbard, 774 A.2d at 501.  The consequence of mistaken reliance on the common knowledge exception, as here, is dismissal.  Plaintiff failed to file the required affidavit for any of his negligence claims against Defendants, and these malpractice claims do not fall within the common knowledge exception.  Therefore, Defendants' motion for partial summary, characterized by the Court as a motion to dismiss, will be granted and Plaintiff's claims for dental and medical malpractice are dismissed with prejudice.  Only Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs remains for trial.  The accompanying Order will be entered.

**August 3, 2010**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge

24